**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES SAMPLE,<br><br>　　　　　　*Plaintiff,*<br><br>　　v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>　　　　　　*Defendants.* | CIVIL ACTION<br>NO. 19-51 |

**PAPPERT, J.**                                                    **August 7, 2024**

<u>**MEMORANDUM**</u>

Charles Sample sued the City of Philadelphia and numerous Philadelphia police officers[1] alleging he was going to buy a car at an auction when a group of officers wrongfully arrested him, confiscated $40,000 in cash, and concocted a narrative about the incident that resulted in Sample pleading guilty to drug related charges. In 2014, numerous Defendants, members of the Philadelphia Police Department's Narcotics Field Unit, were indicted, and in 2017, Sample's motion for a new trial was granted and all charges against him *nolle prossed.* He filed this lawsuit in 2019.

Sample's case, one of many against the City and members of the Narcotics Field Unit, was consolidated before Judge Diamond while bellwether cases went forward. (ECF Nos. 2, 3). In November 2023, Judge Diamond removed the case from suspense and reassigned it to this Court. (ECF Nos. 13, 14). Defendant Joseph McCloskey previously filed a motion to dismiss, prompting Sample to amend his complaint. (ECF

---

[1]　　The Officer Defendants are Jeffrey Walker, Carlos Buitraga, Thomas Liciardello, Michael Spicer, Brian Reynolds, Perry Betts, John Speiser, Charles Kapusniak, Thomas Kuhn, Joseph McCloskey as well as "Officer Brown," "Officer Norman," "Officer Jones," "Officer Passalacqua," "Officer Galazka," "Officer Cleaver" and ten John Doe officers.

Nos. 21, 23).  In the amended complaint, Sample asserts the following claims under 42

U.S.C. § 1983: violation of due process of law—denial of a fair trial by fabricating

evidence; violation of due process of law—intentionally concealing and deliberately

suppressing material exculpatory and impeachment evidence; false arrest; false

imprisonment; malicious prosecution; civil rights conspiracy; and municipal liability.

He also asserts state law claims for false arrest, false imprisonment, malicious

prosecution and conversion.   (ECF No. 23).  Once again, McCloskey moves to dismiss,

as do Defendants Liciardello, Betts, Norman, Speiser and Reynolds.  For the reasons

that follow, McCloskey's motion is granted and all claims against him are dismissed,

while Liciardello, Betts, Norman, Speiser and Reynold's motion is granted in part and

denied in part.

I

Sample alleges that on January 6, 2011, he was on his way to buy a car when

Liciardello arrested him, though certain Officer Defendants were also present.  (Am.

Compl. ¶¶ 70–71).  During his arrest, the Officer Defendants confiscated $40,000 in

cash Sample was carrying to purchase a car.  (*Id.* ¶ 72).  Sample alleges that the

officers did not provide a receipt for the cash nor submit it to an evidence custodian;

instead, they split it among themselves.  (*Id.* ¶¶ 73–74).

Sample further alleges that the Officer Defendants gave false statements and

prepared police paperwork that misrepresented the events that led to his arrest.  (*Id.*

¶¶ 75–76).  Sample says that the Officer Defendants intentionally concealed

*Brady/Giglio* material and concocted a fictitious story to conceal their theft of $40,000.

(*Id.* ¶ 78).  Based on a fabricated narrative, Sample was charged with various drug

crimes. (*Id.* ¶ 81). Sample says the Officer Defendants perjured themselves at his preliminary hearing on January 11, 2011, which resulted in the charges being held for court. (*Id.* ¶ 83). On March 30, 2011, Sample agreed to plead guilty in exchange for a probationary sentence, in large part because he faced years in prison if convicted at trial. (*Id.* ¶ 85).

Sample contends that his story is one of many where the Officer Defendants "white-wash[ed]" police paperwork, submitted false information, withheld material exculpatory evidence and provided perjured testimony to ensure a conviction. (*Id.* ¶¶ 111–18). In 2014, Norman, Liciardello and other Officer Defendants were indicted for racketeering conspiracy, civil rights violations, robbery and extortion. (*Id.* ¶¶ 87–88). On January 6, 2017, a court granted Sample's motion for a new trial. (*Id.* ¶ 89). That same day, the charges against him were *nolle prossed*. (*Id.* ¶ 90).

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the pleader is entitled to relief. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

A court may dismiss claims based on the statute of limitations defense when the defense appears clearly on the face of the complaint. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

III

To state a civil rights claim against an individual defendant, a plaintiff must "make[] sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).  Liability cannot be based "solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Ultimately, a complaint must allege sufficient facts to "allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

As to McCloskey, Sample does not plead sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In another Narcotics Field Unit case, the court dismissed claims against McCloskey based on personal involvement where the allegations were that he approved an arrest report prepared by another officer and otherwise "may have been within a group" who concocted a story for the report. *McGhee v. City of Phila.*, No. 17-832, 2024 WL 1683606, at *8 (E.D. Pa. Apr. 18, 2024).  In *McGhee*, the court emphasized that no allegations indicated McCloskey edited the report, was aware of the alleged falsehoods contained therein or had any active participation in the plaintiffs' arrests or investigation.  *Id.*  Moreover, no factual allegations supported the speculative assertion that McCloskey "may have been within the group of officers who acted in concert and conspired with each other to concoct a story for the report."  *Id.* (internal quotation marks omitted).

Sample's allegations against McCloskey are less specific than those found insufficient in *McGhee*.  Sample makes no specific allegations that McCloskey did anything; rather, he lumps McCloskey with fifteen other "Defendant Officers" and baldly asserts they were involved in Sample's arrest and conviction.  *See Cupp v. Cnty. of Lycoming*, No. 20-1784, 2021 WL 4478304, at *5 (M.D. Pa. Sept. 30, 2021) ("Group pleading such as . . . lumping sixteen defendants together without setting forth what each particular defendant is alleged to have done, is impermissibly vague.").  *See also Harris v. City of Phila.*, No. 20-1350, ECF No. 42 (granting McCloskey's motion to dismiss in another Narcotics Field Unit case).  Sample's "unadorned allegations," *Ogrod*

*v. City of Phila.*, 598 F. Supp. 3d 253, 259 (E.D. Pa. 2022), do not give rise to the reasonable inference that McCloskey was personally involved in the alleged misconduct surrounding Sample's arrest and conviction and the claims against him are dismissed.

However, read in the light most favorable to Sample, the amended complaint alleges enough facts to establish plausible claims for relief against Liciardello, Betts, Norman, Speiser and Reynolds.  Sample alleges that Liciardello arrested him, and that during that arrest, other officers—though he does not yet know who—were present and confiscated $40,000 in cash.  (Am. Compl. ¶¶ 71–72).  Though he may not yet know which officers fabricated evidence and concocted the narrative against him, Sample claims that in December 2012, the Philadelphia District Attorney's Office advised the Philadelphia Police Department that Norman would no longer be permitted to testify as a witness in narcotics cases due to his credibility as an officer.  (*Id.* ¶ 86).  Sample also states that Norman and Liciardello were later indicted and charged with various crimes arising out of their work in the Narcotics Field Unit, (*Id.* ¶ 87–88), as were Betts, Speiser and Reynolds.[2]  *See*, *e.g.*, *United States v. Liciardello*, 93 F. Supp. 3d 365, 366 (E.D. Pa. 2015).  Sample has put Liciardello, Betts, Norman, Speiser and Reynolds on notice of the nature and claims against them, *Twombly*, 550 U.S. at 550, and plausibly alleges their involvement in fabricating a story surrounding his arrest.  Liciardello,

---

[2]      Sample does not specifically allege that Reynolds, Betts and Speiser were also indicted. Rather, he just says "other Defendant Officers were also arrested and charged with similar crimes and transferred out of the narcotic unit." (Am. Compl. ¶ 88).  However, the Court may take judicial notice of matters of public record and the existence of another court's opinion. *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

Betts, Norman, Speiser and Reynolds may renew their argument, if necessary, at summary judgment. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018).

IV

Liciardello, Betts, Norman, Speiser and Reynolds next contend that Sample's federal false arrest, false imprisonment and conspiracy claims and state law false arrest, false imprisonment and conversion claims are time-barred as the events giving rise to those causes of action occurred in 2011, roughly eight years before Sample filed his complaint in 2019.[3]  (Mot. To. Dismiss, p. 8, ECF No. 27).

Sample relies on multiple theories to attempt save his otherwise time-barred claims.  (Resp. To Mot. To Dismiss, ECF No. 29, pp. 17–21).  First, he contends the discovery rule should apply insofar as the Officer Defendants withheld *Brady/Giglio* material during the criminal case which would have helped him file his civil case sooner.  (*Id.* at 19).  He then says the Officer Defendants engaged in "trickery" that prevented Sample from filing his complaint earlier.  (*Id.* at 17–18).  Finally, he seemingly asserts that the deferred accrual rule based in *Heck v. Humphrey*, 512 U.S. 477 (1994), should apply to these federal and state law claims as he was precluded from asserting them until his conviction was overturned.  (*Id.* at 21).

---

[3]     Sample's federal and state law false arrest and false imprisonment claims are subject to a two-year statute of limitations. *See Medina v. Allentown Police Dep't*, No. 23-2055, 2023 WL 7381461, at *2 (3d Cir. Nov. 8, 2023) (citing 42 Pa. Cons. Stat. Ann. § 5524(1)).  His conversion claim also has a two-year statute of limitations. *Douglas v. Joseph*, 656 F. App'x 602, 605 (3d Cir. 2016) (citing 42 Pa. Cons. Stat. Ann. § 5524(3)).

A

As an initial matter, state tolling principles generally apply to § 1983 claims. *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009). But that rule is not absolute. *Id.* Where the state tolling principles contradict federal law or policy, federal tolling principles may apply. *Id.* (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980).

1

The discovery rule tolls the statute of limitations "in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). "[E]ven if a plaintiff suffers an injury, the statute of limitations does not begin to run until the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (internal quotation marks omitted). A plaintiff need not know the "exact nature" of his injury for the statute of limitations to run as long as it objectively appears that the plaintiff "is reasonably charged with the knowledge that he has an injury caused by another." *Id.* (quoting *Ackler v. Raymark Indus., Inc.*, 551 A.2d 291, 293 (Pa. Super Ct. 1988).

The amended complaint suggests Sample knew there was no basis for his arrest. (Am. Compl. ¶ 91). His false arrest and false imprisonment claims therefore accrued in January 2011 and the discovery rule does not apply. *See Creamer v. Schwartz*, No. 16-201, 2016 WL 2733225, at *3 (W.D. Pa. May 11, 2016) (holding discovery rule did not apply to false arrest and false imprisonment claims). *C.f. Cruz v. City of Camden*, 898

F. Supp. 1100, 1113 (D.N.J. 1995) (declining to apply the discovery rule to a false arrest claim where plaintiff knew his injury was attributable to the fault of others but did not know, at that time, the exact identities of all allegedly responsible).  Since federal civil conspiracy claims related to false arrest and false imprisonment begin when the underlying claims accrue, *Allen v. City of Phila.*, No. 19-1066, 2020 WL 134204, at \*3 (E.D. Pa. Jan. 10, 2024), his conspiracy claim, to the extent based on false arrest and false imprisonment, accrued at that time as well.

A conversion claim under Pennsylvania law accrues "when the plaintiff could have first maintained the action to a successful conclusion." *Douglas v. Joseph*, 656 F. App'x 602, 605–06 (3d Cir. 2016) (quoting *Kapil v. Ass'n of Pa. State Coll. & Univ. Faculties*, 470 A.2d 482, 485 (Pa. 1983)).  According to the amended complaint, the Officer Defendants took Sample's money and split it among themselves after Sample was wrongfully arrested on January 6, 2011.  (Am. Compl. ¶¶ 70, 72, 74).  It was at that time Sample was injured, his conversion claim accrued, and the two-year statute of limitations began to run.  *See Douglas*, 656 F. App'x at 605–06.

2

Sample next argues that the Officer Defendants' "trickery," namely, withholding *Brady/Giglio* material, should be a basis to toll the statute of limitations, as they "intentionally induced" Sample not to file his complaint sooner.  (Resp. To Mot. To. Dismiss, p. 18, ECF No. 29).

The Court construes Sample's argument for tolling to be one under Pennsylvania law based on the Officer Defendants' fraudulent concealment.[4]  "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff[] justifiably relied." *D.D. v. Idant Labs.*, 374 F. App'x 319, 323 (3d Cir. 2010) (quoting *Lazarski v. Archdiocese of Phila.*, 926 A.2d 459, 465 (Pa. Super. Ct. 2007) (alteration in original)).  *See also Mest*, 449 F.3d at 516 ("Pennsylvania's fraudulent concealment doctrine tolls the statute of limitations where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'"). Like the discovery rule, the fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the

---

[4]     To the extent Sample argues for tolling under federal law, as an initial matter, he does not explain why Pennsylvania tolling principles are inconsistent with the policies underlying § 1983.  *See Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009) ("Where state tolling principles contradict federal law or policy, federal tolling principles may apply in certain limited circumstances.").  *See also Frasier-Kane v. City of Phila.*, 517 F. App'x 104, 106 (3d Cir. 2013) ("[W]e are skeptical that Pennsylvania tolling principles frustrate the policies underlying § 1983.").

In any event, the Third Circuit has identified "three principal, though not exclusive situations" in which equitable tolling may apply: "(1) [when] the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) [when] the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) [when] the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994).  "[E]quitable tolling based on misleading conduct requires an act of concealment or trickery beyond the original act of wrongdoing." *Tucker v. United States*, No. 14-4893, 2015 WL 10684642, at *4 (E.D. Pa. Sept. 15, 2015) (internal quotation marks omitted); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 542 (D.N.J. 2013).  Here, Sample's argument for tolling—that the Officer Defendants withheld *Brady/Giglio* material—is the basis for his fabrication of evidence, withholding and concealing exculpatory evidence and malicious prosecution claims and is part of the original act of wrongdoing.  Plus, Sample was aware of his claims in January 2011 when he was arrested and had his preliminary hearing.  There was no concealment or trickery that prevented him from timely asserting these claims.

defendant's misrepresentation or omission.  *Mest*, 449 F.3d at 516.  As discussed *supra* subsection IV.A.1, Sample was aware of his claims in January 2011.[5]

### 3

To the extent Sample contends his claims are saved by the *Heck* deferred accrual rule, (Resp. To Mot. To Dismiss, p. 21, ECF No. 29), he is incorrect.  Accrual is deferred under *Heck* only where "at the time the § 1983 suit would normally accrue, there is an *existing* criminal conviction."  *Dique v. N.J. State Police*, 603 F.3d 181, 187 (3d Cir. 2010).  And "false arrest and false imprisonment claims accrue on the earlier of two dates: 'when the false *imprisonment* ends with the plaintiff's release' or, 'if the plaintiff remains detained, . . . when the *false* imprisonment ends with the issuance of legal process—when, for example, the plaintiff is brought before a magistrate.'"  *Medina v. City of Allentown Police Dep't*, No. 23-2055, 2023 WL 7381461, at *2 (3d Cir. Nov. 8, 2023) (quoting *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021)).  Here, Sample alleges he was arrested on January 6, 2011, and though the amended complaint does not include his arraignment date, Sample had a preliminary hearing on January 11, 2011.  *See Collins v. City of Phila.*, No. 16-5671, 2018 WL 1980079, at *4 (E.D. Pa. Apr. 27, 2018) (plaintiff was subject to "legal process" when he had a preliminary hearing).  These claims, plus the conspiracy claim based on them, accrued before Sample's guilty plea and conviction on March 30, 2011, and the *Heck* deferred accrual rule does not apply.

---

[5]     Sample's allegations that the officers withheld *Brady/Giglio* material and fabricated evidence against him, though not a basis to toll the statute of limitations under the doctrine of fraudulent concealment, may still be relevant to his surviving claims.

The *Heck* deferred accrual rule does not apply to Sample's state law claims. *Coello v. DiLeo*, 43 F.4th 346, 356 (3d Cir. 2022) ("[A] cause of action brought under state law is not subject to *Heck*'s claim-accrual rules . . . ."). Moreover, no Pennsylvania state court has adopted such a rule, *see Gordon v. Liciardello*, No. 19-3761, 2024 WL 3540979, at *4 (E.D. Pa. July 25, 2024), nor do Sample's false arrest, false imprisonment and conversions claims "resemble the malicious prosecution tort." *Coello*, 43 F.4th at 356.

V

Leave to amend may be denied if amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Sample has had ample opportunity to gather facts surrounding McCloskey's involvement in the events surrounding his arrest and conviction. He has already amended his complaint and offered no specific factual allegations. As in *McGhee*, Sample's claims against McCloskey are dismissed with prejudice as further amendment would be futile. Similarly, as there is no basis for equitable tolling or delayed accrual, Sample's claims dismissed based on the statute of limitations are also dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.